THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SERVCO PACIFIC INC., | ) | CV NO 06-00393 DAE KSC |
| | ) | |
| Plaintiff and | ) | |
| Counterclaim Defendant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MASTERS PROPERTIES, LLC, | ) | |
| | ) | |
| Defendant and | ) | |
| Counterclaimant. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT WITH RESPECT TO LOTS 1058 AND 1059

The Court heard Defendant's Motion on March 12, 2007. Bruce L.

Lamon, Esq., appeared at the hearing on behalf of Plaintiff; Ke-Ching Ning, Esq.,

appeared at the hearing on behalf of Defendant.  After reviewing the motion and

the supporting and opposing memoranda, the Court GRANTS Defendant's Motion

for Partial Summary Judgment.

BACKGROUND

Defendant Masters Properties, LLC ("Masters") claims that Servco is

in breach of its lease for land Lots 1058 and 1059, located in Mapunapuna, on

Oahu, for its failure to pay appropriate rent.[1]  The lease for Lots 1058 and 1059,

effective February 23, 1982, was originally between Damon Estate and Tripler

Warehousing Company, as lessors, and Atlas Building Materials Inc., as lessee.

The lease was assigned to Masters, as lessor, and Servco, as lessee, through a

mense conveyance.

A.    Relevant Provisions of the Lease

        The lease fixed the rent through February 29, 1992, and the rent was

to be reset at ten-year intervals for the next four successive ten-year periods.  The

lease provides that if the parties cannot agree to the net annual rent at least 90 days

before the date of resetting, the parties will submit the issue to rent appraisal

arbitration to determine the fair and reasonable annual rent.  The lease further

provides that "[u]ntil determination of such rent by agreement or appraisal as

herein provided, quarterly installments at the same rate payable for the proceeding

year shall be paid on account thereof."  (Masters' Ex. 1 at 14.)  Under this

provision, it is possible that the new appraised rent could be either lower or higher

---

        [1]Masters brought a motion for partial summary judgment regarding the
alleged breach for Lots 1058, 1059 and 1060.  By letter dated February 12, 2007,
however, Servco informed this Court that the parties agreed to continue the claims
regarding Lot 1060 pending the outcome of rent arbitration, which is currently
scheduled for April 2007.  This Court will thus only address issues regarding Lots
1058 and 1059.  The motion reserves for trial issues of damages or remedies.

than that for the previous period.  The lease also provides that Servco will pay interest at the rate of one percent per month "or higher as may then be permitted by law on all delinquent rent, taxes and other charges" until fully paid.  (Masters' Ex. 1.)

The lease states that "acceptance of rent by the Lessors shall not be deemed to be a waiver by them of any breach by the Lessee of any covenant herein contained, nor of the Lessors' right to terminate this lease for breach of covenant." (Masters' Errata Ex. A.)

B.    Conduct of the Parties

By rent appraisal arbitration award, dated April 7, 1993, the rent for Lots 1058 and 1059 was fixed at $4.65 per square foot for the ten-year period ending in February 2002.  No agreement was reached as to the rent for the period beginning March 1, 2002.

In or around 1998, Servco brought suit against multiple parties, including Masters, seeking to apportion or shift the burden of a multimillion dollar clean up of environmental contamination of Lots 1058, 1059, and 1060.  On May 4, 2004, while the environmental lawsuit was pending, Servco sent a letter to Masters regarding the rent for the three lots.  Servco stated as follows:

For various reasons, the setting of the new rent, retroactive to March 1, 2002, has been delayed and we have been overpaying for more than two years now. It makes no sense for us to continue to do so.

Valuation experts will confirm that the rent Servco has been and is currently paying for these parcels is significantly above 'fair and reasonable' rent, even without factoring in the impact of the contamination of these parcels. . . . we have no doubt HRPT will owe Servco a refund or at least a future rent offset once the new rental rate is determined, retroactive to March 1, 2002.

As a starting point, we believe that rent in the amount of $3.00 per square foot (without consideration of the contamination issues) is a more realistic figure for Lots 1058 and 1059, than the $4.65 per square foot that we are currently paying. This $3.00 figure may not be the 'fair and reasonable' rent rate that will come out of our negotiations, but we are prepared in the spirit of cooperation to use this figure as a placeholder and as a means to reduce the overpayment in rent until we conclude our discussions. Therefore, rather than continue to overpay the rent, Servco will apply a rate of $3.00 per square foot on Lots 1058 and 1059. . . . To further reduce the overage, we will commence to pay rent on Lots 1058 and 1059 at the rate of $1.00 per square foot, until the excess that we have been paying since March 2002 is reduced to zero. At that time we will begin to pay at the rate of $3.00 per square foot for Lots 1058 and 1059.

(Masters' Ex. 4.)

4

On May 24, 2004, Masters sent a letter to Servco in response and
stated that "[w]hile it is in everyone's interest to continue an open and broad-based
dialogue on the issues that have arisen under the Lease, the Lease already contains
a rent adjustment mechanism should adjustment be necessary.  Accordingly, we
remind you of Servco's obligation to comply with the provisions of the Lease,
including, of course, those which govern the payment of rent."  (Masters' Ex. 6.)

Thereafter, Masters invoiced Servco for the full amount of the rent for
the lots.  Servco paid Masters at the reduced rental rate for approximately two
years (from May 2004 to May 2006).  During this period, Masters accepted the
reduced payments, and Masters' quarterly invoices did not reflect any past due
balance, late charges, declaration of default, or other objections to the payment of
reduced rent.  (See Masters' Ex. 5.)

On May 8, 2006, the award from an appraisal arbitration for the
period from March 1, 2002 to February 29, 2012, set the rent at $3.25 a square
foot.  On June 19, 2006, Masters wrote to Servco requesting that Servco "pay rent
arrears (including interest accrued because Servco withheld rent, and GET) per the
attached accounting."  (Masters' Ex. 9.)  Servco responded on July 5, 2006, stating
that it disagreed with the accounting because it failed to reflect Servco's

overpayment of rent from January to May 2004, improperly computed interest, and did not credit Servco with interest on the overpayments." (Masters' Ex. 10.) On July 7, 2006, Servco provided Masters with its calculation of rent due on the lots without interest. Servco stated that it questioned whether there was any delinquent rent that would entitle Masters to interest, and that if interest was to be assessed against Servco, fairness required that it also be assessed against Masters for the period of time that Servco overpaid the rent. Servco also stated that pending agreement on the amount of rent due, no interest should accrue after June 30, 2006.

Masters responded on July 12, 2006, stating that Servco owed rent and interest because it breached the lease and that its "default has caused the accrual of the rent arrears. It made no 'overpayments,' because the Lease required Servco to pay just such payments, which it did not do." (Masters' Errata Ex. C.) Masters stated that interest would accrue until Servco paid the arrears and the $126,640.80 that it owed.

On July 20, 2006, Servco conceded that it owed $85,350.55, which included payment of 1% simple monthly interest pursuant to the lease. Servco has since paid that amount. Servco stated that the issue is whether Masters owes Servco interest for the two-year period during which Servco allegedly overpaid the

rent (March 2002 to May 2004).  Servco noted that the lease did not directly address this issue, but that by calculating simple interest at a legal rate of 10% per annum on the declining overpayment balance and with the payment of $85,350.55, Servco was current on the annual rent for Lots 1058 and 1059 through June 30, 2006.  Masters claims that Servco still owes $48,746.48 for the lots since Servco's credit was used up by October 1, 2005 and arrears plus 1% monthly interest accumulated from that time forward.

On July 14, 2006, Servco filed a Complaint, which was removed to this Court, regarding Masters' termination of the lease for Lot 1060.  On July 21, 2006, Masters filed an answer and counterclaim, regarding alleged breach of contract for rent owed for Lots 1058, 1059 and 1060.  Masters filed the instant motion on September 1, 2006, seeking summary judgment in its favor on the Complaint and the Counterclaim on the grounds that Servco breached the leases. Servco filed its opposition on September 22, 2006, and Masters filed a reply on September 29, 2006.

<u>STANDARD OF REVIEW</u>

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. California Dept. of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial–usually, but not always, the defendant–has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine

8

issue for trial"and  may not rely on the mere allegations in the pleadings.   Porter,

419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986)).  In setting forth "specific facts," the nonmoving party may not meet its

burden on a summary judgment motion by making general references to evidence

without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885,

889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary

judgment, the court shall have no independent duty to search and consider any part

of the court record not otherwise referenced in the separate concise statements of

the parties.").  "[A]t least some 'significant probative evidence'" must be

produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v.

Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence

that is merely colorable or not significantly probative does not present a genuine

issue of material fact."  Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with

"direct evidence" produced by the party opposing summary judgment, "the judge

must assume the truth of the evidence set forth by the nonmoving party with

respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence

and inferences must be construed in the light most favorable to the nonmoving

9

party.  <u>Porter</u>, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  <u>Id.</u> However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.

DISCUSSION

Masters asserts that Servco breached the lease by failing to timely pay the rent and refusing to fully pay the back rent plus interest as established by the rent arbitration award.  Although they are not moving for damages at this time, Masters asserts that Servco still owes $48,746.48, which is derived from subtracting the $85,350.55 Servco paid from the $134,097.03 amount that Masters claims is owed.

Servco argues that it has paid Masters rent and interest per the arbitration award, but that the dispute centers on whether Servco should be allowed interest on its overpayments on account.  Servco states that pursuant to its own accounting, it owed and has paid Masters $85,350.35, which includes payment of 1% simple monthly interest.  Servco states that this amount also includes a credit to itself at the legal rate of 10% interest on the overpayments it made from 2002 to

2004, and debited against itself interest at the lease contract rate of 12% beginning in October 2005, when its credit on account was exhausted.  Thus, Servco states that it is current in its payments and is not in breach.

Masters asserts that Servco's payments from 2002-2004 were not overpayments, but payments made pursuant to the terms of the lease.  Masters argues that Servco is essentially asking that this Court rewrite the lease to add in a 10% interest provision for payments made pursuant to the lease before the appraisal arbitration has set the new rent, something which this Court cannot do. This Court agrees.

Servco has not established that it is entitled to interest.  Indeed, Servco admits that the lease is silent as to whether Servco is entitled to interest.  Servco's only support for its claim to interest is that Hawaii Revised Statutes section 478-2 applies.  The statute provides that "[w]hen there is no express written contract fixing a different rate of interest, interest shall be allowed at the rate of ten percent a year . . . For money upon an open account, after sixty days from the date of the last item or transaction."  Haw. Rev. Stat. § 478-2.  Servco's argument misses the point.  Because there is an express written agreement, which provides for interest to be paid to the lessor and does not provide for interest to be paid to the lessee, the

statute only becomes applicable if the terms of the lease are ambiguous, or if the lease provided for interest to be paid to the lessee but failed to include a rate of interest.[2]  Servco does not argue that either situation applies.  Accordingly, even if it were true that Servco made "overpayments," the terms of the lease do not provide for Servco to accrue any interest for payments made, which after the rent appraisal arbitration are found to be overvalued.  Thus, Servco has breached the lease by crediting itself interest of 10% per annum on its alleged 'overpayments.'

Servco also argues that the $134,097.03 allegedly owed is not supported by the evidence since Mr. Gambetta does not explain in his declaration how he came to that figure and the figure does not tie to Masters' June 19, 2006 accounting or to the invoices submitted as Exhibit 5.  This argument, however, does not prove that Servco is in compliance with the lease terms.  Further, Masters is not currently moving for damages or remedies.

Although this Court is sympathetic to Servco's argument that the parties did not intend that Servco make an interest free loan for more than two

---

[2] See State Farm Fire and Cas. Co., 978 P.2d at 762 ("[C]ontractual terms should be interpreted according to their plain, ordinary meaning and accepted use in common speech. The court should look no further than the four corners of the document to determine whether an ambiguity exists.")

years, this argument fails because "[i]t is well settled that courts should not draw inferences from a contract regarding the parties' intent when the contract is definite and unambiguous." State Farm Fire and Cas. Co. v. Pacific Rent-All, Inc., 978 P.2d 753, 762 (Haw. 1999). Servco has not argued that the lease terms are ambiguous. Furthermore, neither Servco, nor Masters were parties to the original contract, and thus, Servco has not produced any evidence regarding their intent.

Servco next asserts that Masters has waived, is estopped to assert, and/or has acquiesced in the alleged breach. Servco states that Masters' conduct has been inconsistent with the breach it now claims since it accepted Servco's reduced payments on account without protest for over two years. In addition, Servco asserts that it attempted to have the rental appraisal take place but that Masters sought to delay it. Servco's argument fails as Masters objected to Servco's reduced payments in its May 24, 2004 letter and again later objected. Further, the lease provides that acceptance of rent shall not be deemed a waiver of a breach of contract.

Accordingly, Masters' motion for partial summary judgment is granted with respect to the issue that Servco breached the lease for Lots 1058 and

1059 by failing to make timely rental payments and by crediting to itself interest

for alleged overpayments made between 2002 and 2004.

<u>CONCLUSION</u>

For the reasons stated above, the Court GRANTS Masters' Motion for

Partial Summary Judgment as to the issue that Servco breached the lease for

Lots 1058 and 1059.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 14, 2007.



_____
David Alan Ezra
United States District Judge

<u>Servco Pacific Inc. v. Masters Properties, LLC</u>, CV No. 06-00393 DAE-KSC;
ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT  WITH RESPECT TO LOTS 1058 AND 1059